UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Case No. 23-cr-225 (RCL) |
| v. | : | |
| | : | |
| **FREDERICK WEBB,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Frederick Webb to 14 days of incarceration. The government also requests that, consistent with the plea agreement in this case, this Court order the defendant to pay $500 in restitution.

**I.      Introduction**

Frederick Webb, a 22-year-old retail sales associate, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

1

Webb pleaded guilty to violating 40 U.S.C. §§ 5104(e)(2)(G) (Parade, Demonstrate, or Picket in any of the Capitol Buildings). The government's sentencing recommendation of 14 days of incarceration is supported in that Webb 1) encouraged others to breach the U.S. Capitol building and attack law enforcement; and 2) lacks remorse for the events of that day.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in] the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Webb's crime support a sentence of 14 days of incarceration and $500 in restitution.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No 6 (Statement of Offense).

*Defendant Webb's Role in the January 6, 2021 Attack on the Capitol*

The Capitol Police's security footage, open-source videos, and photographs captured Webb inside the U.S. Capitol building on January 6, 2021. That day, Webb was wearing brown pants, a black jacket, a green neck gaiter/facemask, and a black and gray striped knit cap. See Image 1.

---

Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.



*Image 1: Photo of Webb*

Open-source images captured Webb close to the "front lines" of the protestors, directly outside of the Senate Wing doors to the Capitol building. He repeatedly shouted, "Let us in!". See Image 2.



*Image 2: Webb is seen at the front of the crowd, filming rioters who are engaged in direct confrontations with law enforcement and attempting to breach the doors of the US Capitol.* [2]

---

[2] *Source: https://archive.org/details/SEr8sBKW7HF9os98c*

Webb filmed the events around him and supported and encouraged other rioters engaged in direct confrontations with police inside the U.S. Capitol building. For example, in one video, Webb is seen smiling while patting the back of a rioter who had just been involved in a confrontation with law enforcement protecting the doors of the US Capitol Building. See Image 3. At the time, remnants of an unknown chemical spray were still visible on this subject's clothing.



*Image 3 (at 1:02)[3]*

Webb entered the United States Capitol building through the Senate Wing Door at 3:05 p.m. See Image 4. As he did so, he filmed the riot on this phone.



---

[3] *Source: https://www.gettyimages.com/detail/video/exterior-shots-of-trump-supporters-breaking-into-the-news-footage/1295018440*

4

*Image 4*

Webb then went down the hallway towards the Crypt. He loitered in the Crypt with other rioters until approximately 3:18 p.m. filming and photographing. See Image 5.



*Image 5*

At one point in the Crypt, Webb photographed himself in front of a sign that read "America First. Never give up, never surrender!!!" See Image 6.



*Image 6: Webb taking a photo of himself in the Crypt*

Webb left the Crypt area and returned to the Senate Wing Door lobby. From there, he exited the U.S. Capitol building through the Senate Wing Doors at 3:19 p.m. after having spent approximately 14 minutes inside. See Image 7.



*Image 7*

*The Charges and Plea Agreement*

On July 13, 2023, the United States charged Webb by Information with violating 40 U.S.C. §§ 5104(e)(2)(G) (Parade, Demonstrate, or Picket in a Capitol Building). On September 1, 2023, pursuant to a plea agreement, Webb first appeared in Court and pleaded guilty to the one count Information. By plea agreement, the defendant also agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Webb now faces sentencing for violating 40 U.S.C. §§ 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Webb faces up to six months of imprisonment and a fine of up to $5,000. Webb must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 day's incarceration and $500 in restitution.

#### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Webb's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Webb, the absence of violent or destructive acts is not a mitigating factor. Had Webb engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Webb's case his encouragement of others that day and continue showing of little remorse for his actions. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 day's incarceration in this matter.

#### B. Webb's History and Characteristics

As set forth in the PSR, Webb has no prior history of criminal activity. Also, to his credit, he agreed to a pre-charge resolution of this matter which avoided the need to arrest him and initiate removal and initial proceedings in the federal courts.

7

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Webb must also be deterred from future criminal activity, including any activity similar to that of January 6, 2021. While he has pleaded guilty to this offense and has no criminal history, he has, nonetheless, shown little remorse for his actions. Rather, he merely admitted to the criminal conduct required to support his guilty plea. Webb's absence of genuine remorse highlights the continued need for specific deterrence and sets this case apart from the cases in which other defendants received the benefit of the court's leniency based, in part, on their heartfelt remorse. Accordingly, a sentence must be imposed that would deter Webb specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Webb based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Webb has pleaded guilty to Count One of the Information, charging him with violating 40 U.S.C. §§ 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who entered the U.S Capitol building.

In *United States v. Kimberly and Colton Wargo*, 22-CR-319, this Court sentenced to 14 days' incarceration defendants who entered into the U.S. Capitol Building through the broken Senate Wing Doors at 2:20 p.m., approximately seven minutes after the doors were breached by other rioters, traveled from the Rotunda and walked extensively to other parts of the Capitol, including near private House and Senate offices, and left the building after 30 minutes. While Webb entered later and did not remain as long, his actions outside and inside the Capitol warrant a similar sentence.

In *United States v. Kenneth Armstrong*, 22-CR-045, this Court sentenced to 14 days' incarceration a defendant who entered the Capitol building despite seeing overthrown fencing, hearing flash bang grenades, and watching overwhelmed police officers attempt to disperse rioters with rubber bullets, boasted on Facebook that he had entered the Capitol building and took a "tour of Our House"; and demonstrate no acceptance of responsibility or remorse for his actions, and instead casts blame for the breach on law enforcement. Similarly, Webb seemed to encourage and celebrate the actions of the rioters that day.

10

In *United States v. Zachariah Sattler*, 23-CR-0003, this Court sentenced Sattler to 30 days after he eagerly joined the siege of the Capitol, encouraged other rioters to join the attack with rallying cries such as, "they dones bustin' through the gate, we're going to the motherfucking Capitol Building!" and, after breaching the Capitol's East Rotunda Doors, urged other members of the mob to penetrate deeper into the building during his 20 minutes inside. While, unlike Webb, that defendant smoked marijuana in the Capitol Rotunda and had a criminal history, Webb's support similarly served as a rallying cry and encouraged the chaos inside the Capitol on that day.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.     **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to

restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Webb must pay $500 in restitution, which reflects in part the role Webb played in the riot on January 6.[6] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Webb's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Webb to 14 day's incarceration and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Webb's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270